IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 08-cv-02051-RPM

BOBBY WILLIAMS,

    Plaintiff,

v.

NANCY McCALLIN, in her individual and official capacity,
BARBARA McDONNELL, in her individual capacity,
CINDY HESSE, in her individual capacity, and
KRISTIN CORASH, in her individual capacity,

    Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

    Bobby Williams is an African-American citizen of the United States. On October 11, 2006, his employment as Director of Applications Management for the Colorado Community College System was terminated, effective December 15, 2006. He brought this action claiming race discrimination prohibited by 42 U.S.C. § 1981 and retaliation for his expressed intention to speak publicly on a matter of public concern in violation of the protection afforded him by the First Amendment to the United States Constitution, made applicable under the Fourteenth Amendment and remedial by damages under 42 U.S.C. § 1983. The defendants are Nancy McCallin, President of the Colorado Community College System (CCCS), Barbara McDonnell, Executive Vice President and General Counsel of CCCS, Cindy Hesse, Human Resource Director of CCCS, and Kristin Corash, Associate Vice President of Planning and Research for CCCS. After all discovery, the defendants moved for summary judgment of dismissal contending that

the plaintiff has failed to show evidentiary support for his claims.  Considering the papers filed and the statements of counsel at the hearing held on July 20, 2010, the Court finds and concludes that there is insufficient evidence to support factual findings required for recovery on these claims.

The letter of termination, signed by Cindy Hesse, made the following statement as the sole reason for dismissing Mr. Williams:

> The reason for the termination is your inability to perform your duties at the level required of this position.

Exhibit 39.

Mr. Williams contends that this reason must be taken as pretextural because his record of performance of his duties was inconsistent with that conclusion.  It is established law that the analysis of a claim of race discrimination under 42 U.S.C. § 1981 is the same as that for a claim made under Title VII.  *Salguero v. City of Clovis,* 366 F.3d 1168 (10th Cir. 2004).  Accordingly, for this motion, it is assumed that Mr. Williams can establish a *prima facie* case of disparate treatment and the question is whether he has shown enough support for a jury determination that this stated reason is a pretext to mask race discrimination.

The CCCS is governed by the State Board for Community Colleges and Occupational Education, an agency of the State of Colorado.  The system consists of 13 community colleges.  Mr. Williams was first employed in February, 1991.  Before February, 2005, he was the IT Director of the Community College of Aurora.  The Colorado General Assembly in May, 2004, adopted the recommendations of a Governor's task force to strengthen and improve the community college system and

enacted legislation which included a direction for centralizing and standardizing the information technology functions of the system. C.R.S. § 23-60-104.5. Implementation of that direction was to be completed on or before June 30, 2006.

Dr. McCallin was responsible for selecting a Chief Information Officer (CIO) and Vice President of Technology for CCCS to be responsible for compliance with that legislative mandate. The system was designated as an Enterprise Resource Planning System (ERP). After a nationwide search process and selection of candidates for the position by a screening committee, Dr. McCallin selected Purnendu Sarkar for the position. He accepted on December 15, 2004, with a starting date of January 10, 2005. Exhibit 8.

The governing board received proposals from several software companies for the ERP project and ultimately approved a contract with Sungard/SCT Banner (Sungard) as the vendor.

In February, 2005, Mr. Sarkar hired Bobby Williams as the CCCS Director of Applications Management. Bryan Crawford was hired as the CCCS Director of IT Infrastructure. These positions were exempt from the Colorado Civil Service System, and, accordingly, Mr. Williams was an at-will employee in a management position.

The migration of the existing software applications among the various campuses to the Sungard system was difficult. The development of the integrated system had to be accomplished without interrupting the continuing operations of the schools' legacy applications.

The relationship between Mr. Sarkar and Sungard's personnel became contentious. By the spring of 2006 it became apparent that the ERP system as implemented was not working and Mr. Sarkar blamed Sungard.

The problems with the system became a matter of public concern when students were unable to register for fall classes, resulting in a drop in enrollment. Additionally, some of the presidents of the colleges complained about performance of the ERP in June and July, 2006.

Disputes with Sungard had been the subject of negotiation conducted by Daniel Graham, an attorney retained to represent CCCS. Mr. Graham had the assistance of Jim Ritchey, who, with his company Delta Initiatives, had experience with implementing a student system with DeVry University with success. After a settlement of a payment dispute with Sungard, Dr. McCallin and Barbara McDonnell retained Mr. Ritchey to audit the status of the ERP implementation.

Mr. Ritchey submitted an audit report, dated August 14, 2006. Exhibit 25. He was critical of the project management. After receiving the audit, Dr. McCallin decided to terminate Mr. Sarkar's employment and on August 18, 2006, she and Barbara McDonnell informed Mr. Sarkar that his employment was terminated effective August 31, 2006.

On the same date, Mr. Ritchey was hired as the interim CIO, effective August 21, 2006. Mr. Ritchey's assignment was announced by Cindy Hesse in e-mail to all staff members, sent August 18, 2006, describing Mr. Sarkar's leaving as a resignation to pursue other career opportunities. Exhibit 28.

Barbara McDonnell and Cindy Hesse discussed perceived failures of performance of the duties of the plaintiff's management position in early October, 2006, and Ms. McDonnell delegated to Ms. Hesse the authority to terminate his employment, which she did.

The plaintiff's claim of pretext is supported by an evaluation of his performance made by his supervisor Mr. Sarkar. That contention is undermined by the fact that Mr. Sarkar was fired for his poor management. The inadequacies of Mr. Williams' management are summarized in Exhibits 4 and 30. While Mr. Williams disputes many of the matters mentioned in that summary, there is ample support for the decision that Mr. Williams and Mr. Sarkar bore responsibility for the failures of implementation of the ERP within the time designated for completion.

The plaintiff contends that he was treated differently from Bryan Crawford but that argument is not persuasive, given the differences in the responsibilities assigned to these two directors. The issue before this Court is not whether Mr. Williams was fairly treated or whether the management decision to terminate his employment was a good judgment. The question is whether a jury could fairly infer that race was a motivating factor and the evidence presented would not warrant such an inference.

The plaintiff's First Amendment claim is an unusual one. He does not contend that his letters of concern addressing numerous problems at CCCS addressed to management were expressions protected under *Garcetti v. Ceballos,* 547 U.S. 410 (2006). The claim is that these expressions formed a basis for concern that he would go public with his observations.

A Denver television station began investigative reporting of the problems with the computer system in October, 2006, resulting in broadcasts in October and November. The station had made a request for records and Mr. Williams participated in a meeting of management to discuss a response. He said that he would not help to fabricate a cover story about these problems if asked. Thus, Mr. Williams claims that his termination was in retaliation for the expectation that he would make these concerns publicly known. The contention that this amounts to chilling of future speech is unsupported by any legal precedent. Indeed, it is not a plausible factual contention, given that the television broadcasts that were submitted in Plaintiff's Exhibit X feature Mr. Sarkar. At any rate, the lack of a showing of clearly established law entitles the defendants to the protection of qualified immunity on this claim.

Upon the foregoing, it is

ORDERED that the defendants' motion for summary judgment is granted and the Clerk will enter judgment of dismissal of this civil action and for the award of costs to the defendants.

Dated: July 26th, 2010

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge